UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LENNELL SUMAS,                    )
an individual,                    )          Case No:
                                  )
                Plaintiff,        )          Judge:
                                  )
v.                                )          Magistrate Judge:
                                  )
SOUTHEASTERN HOSPITALITY          )
PARTNERS, LLC                     )
                                  )
                Defendants.       )
_____  )

## COMPLAINT

Plaintiff, LENNELL SUMAS, by and through her undersigned counsel, hereby files this Complaint and sues Defendant, SOUTHEASTERN HOSPITALITY PARTNERS, LLC (hereinafter referred to as "DEFENDANT"), for declaratory and injunctive relief, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (hereinafter referred to as "ADA") and declaratory and injunctive relief, damages, attorneys' fees, and costs pursuant, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter, "LCHR"); and alleges the following:

## JURISDICTION AND PARTIES

1.    This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and the LCHR.

2.    This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as the Federal claims.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue

1

in this lawsuit is located in Jefferson Parish, in the Eastern District of Louisiana.

4.      Plaintiff, LENNELL SUMAS, (hereinafter referred to as "MS. SUMAS"), is a person of the age of majority and a citizen of the State of Texas, Harris County.

5.      MS. SUMAS resides in Spring, Texas.

6.      MS. SUMAS is a qualified individual with a disability under the ADA and the LCHR.

7.      MS. SUMAS has cerebral palsy.

8.      Due to her disability, MS. SUMAS is substantially impaired in several major life activities and requires a motorized wheelchair to ambulate and a hydraulic lift to get from her wheelchair into bed or to use the bathroom.

9.      Upon information and belief, SOUTHEASTERN HOSPITALITY PARTNERS, LLC a limited liability company domiciled in the State of Georgia and doing business in Jefferson Parish, Louisiana is the owner and operator of the Property which is the subject of this action, to wit: Comfort Suites Harvey, 1611 Elton Court Road, Harvey, LA 70058 (hereinafter referred to as "the Property").

10.     Upon information and belief, the Property is a hotel.

11.     MS. SUMAS has been to the Property to stay at the hotel.

12.     DEFENDANT is obligated to comply with the ADA and the LCHR.

13.     All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Jefferson Parish, Louisiana

### COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

14.     MS. SUMAS realleges and reavers the above Paragraphs as if they were expressly restated

herein.

15.    The Property is a place of public accommodation, subject to the ADA, generally located at: 1611 Elton Court Road, Harvey, LA 70058.

16.    MS. SUMAS came to stay at the Property on May 30, 2025.

17.    MS. SUMAS was in Harvey with her husband to visit her father-in-law.

18.    Ms. SUMAS booked an ADA-compliant room to accommodate her motorized wheelchair.

19.    When MS. SUMAS and her husband arrived at the Property to check in on the evening of May 30, 2025, they learned that they were assigned to a room on the second floor.

20.    MS. SUMAS asked at check-in for a room on the first floor but was informed that there were no ADA-compliant rooms on the first floor.

21.    Once MS. SUMAS and her husband received the room keys for the room on the second floor of the Property, they used the elevator to get up to the room.

22.    After entering the room on the second floor and confirming that it could accommodate MS. SUMAS' wheelchair and hydraulic lift, MS. SUMAS and her husband exited the hotel room and returned to the elevator so that they could go down to retrieve their belongings from their car.

23.    When MS. SUMAS and her husband entered the elevator, the doors closed but the elevator did not move. The doors then opened again on the second floor.

24.    MS. SUMAS and her husband again pushed the elevator button for the first floor. This time, the elevator doors closed and the elevator dropped a little. Then the lights on the button panel went dark and the doors opened to the second floor again.

25.    MS. SUMAS and her husband then exited the elevator on the second floor and called the

front desk to let DEFENDANT know that the elevator was not working properly.

26.    The individual MS. SUMAS spoke to at the front desk stated that they were aware the elevator was not working and it needed to be "reset." MS. SUMAS was advised to wait an hour for the elevator to work.

27.    An hour later the elevator was still not functioning. The elevator doors were repeatedly opening and closing without prompting.

28.    MS. SUMAS called the front desk to ask about the malfunctioning elevator. The individual MS. SUMAS spoke to at the front desk advised that management would need to contact the elevator company.

29.    MS. SUMAS asked whether there was another elevator in the building such as a freight elevator. Front desk staff informed her that there was no other elevator.

30.    One of the individuals working at the front desk suggested that MS. SUMAS' husband carry MS. SUMAS down the stairs.

31.    Because it was late and there was not another option, MS. SUMAS' husband carried her hydraulic lift and their luggage up the stairs while MS. SUMAS remained on the second floor.

32.    The next day, May 31, 2025, around 10am, MS. SUMAS and her husband called the front desk to ask if the elevator was working. The front desk staff informed them that the elevator was still not working and someone from the elevator company would need to come to the Property.

33.    MS. SUMAS learned that the elevator had not been working on Thursday, the day before MS. SUMAS checked in for her stay.

34.   The elevator remained broken all day on May 31, 2025. MS. SUMAS did not observe any attempts to repair the elevator that day. MS. SUMAS remained stuck on the second floor.

35.   One employee at the Property accused MS. SUMAS of breaking the elevator by claiming DEFENDANT had footage of her "running into" the elevator.

36.   The following day, June 1, 2025, the elevator was still not working.

37.   MS. SUMAS' mother then called the Fire Department to ask for help bringing MS. SUMAS downstairs.

38.   The Fire Department arrived and used a "stair chair" to transport MS. SUMAS and her hydraulic lift down the stairs

39.   The Fire Department informed MS. SUMAS that they had not been notified by DEFENDANT that the elevator was broken and there were mobility impaired individuals who would be trapped in the case of an emergency.

40.   In total, MS. SUMAS was trapped on the second floor and unable to leave for over forty (40) hours, until she called the Fire Department to help her.

41.   MS. SUMAS has personally observed and is aware of the mobility-related barriers at the Property.

42.   DEFENDANT failed to provide a reasonable accommodation by failing to provide MS. SUMAS with an ADA-compliant room on the first floor, or alternatively, failing to provide her with a working elevator during her stay or by calling the Fire Department for her.

43.   DEFENDANT failed to maintain in operable working condition, the elevator at the Property, which is required to be readily accessible to and usable by individuals with

disabilities.

44.    MS. SUMAS fears that when she enters the Property to utilize its services in the future, she will encounter the same barriers to access, and the same failures to accommodate, which are the subject of this action.

45.    The barriers are excluding MS. SUMAS from the programs, services, and activities offered at the Property.

46.    The barriers are excluding MS. SUMAS from the equal opportunity to participate in, or benefit from the programs, services, and activities which are offered to the general public at the Property.

47.    Upon information and belief, DEFENDANT is in violation of 42 U.S.C. § 12181 *et seq*. and 28 C.F.R. § 36.302 *et seq*. and are discriminating against MS. SUMAS due to, but not limited to, the following violations which exist at the Property:

  I.    UPON INFORMATION AND BELIEF, THE FOLLOWING BARRIERS ARE ALLEGED TO BE THE RESPONSIBILITY OF DEFENDANTS:

  A.    The lack of ADA-compliant hotel rooms on the first floor of the Property;

  B.    The failure to maintain the elevator at the Property in operable working condition; and

  C.    Other mobility-related ADA barriers to be identified following a complete inspection.

48.    Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions

of the ADA, even though removal is readily achievable.

49.    Upon information and belief, removal of the discriminatory barriers to access located on the Property is readily achievable, reasonably feasible, and easily accomplished, and would not place an undue burden on DEFENDANT.

50.    Upon information and belief, removal of the barriers to access located on the Property would provide MS. SUMAS with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations offered to the general public at the Property.

51.    Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

52.    Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

53.    By failing to provide an accessible hotel room DEFENDANT effectively precluded MS. SUMAS from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204 and 36.302(a).

54.    Public accommodations must maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 CFR § 36.211(a).

55.    By failing to maintain the elevator in operable working condition, DEFENDANT failed to

provide public accommodations that were readily accessible to and usable by MS. SUMAS, an individual with a disability. 28 CFR § 36.211(a).

56.    MS. SUMAS was further discriminated against by being subjected to the humiliation and discomfort of having to call the Fire Department to help her exit the second floor of the hotel using a "stair chair." There is no analogous experience to which an ambulatory patron could have been subjected and no adequate comparison can be made for ambulatory individuals.

57.    MS. SUMAS fears that if she returns to the Property, she would again be subjected to discrimination on the basis of her disability.

58.    MS. SUMAS intends to visit the Property in the future when she comes to visit her father-in-law.

59.    Upon information and belief, modification of the policies, practices, and/or procedures of DEFENDANT would provide MS. SUMAS an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which DEFENDANT offers to the general public.

60.    MS. SUMAS has been obligated to retain undersigned counsel for the filing and prosecution of this action. MS. SUMAS is entitled to have her reasonable attorneys' fees, costs, and expenses paid by DEFENDANT pursuant to 42 U.S.C. § 12205.

## COUNT II: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS

61.    MS. SUMAS repeats and realleges all preceding paragraphs in support of this claim.

8

62.   At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., (hereinafter referred to as "LCHR") has been in full force and effect and has applied to the conduct of DEFENDANT.

63.   At all times relevant to this action, MS. SUMAS has experienced substantial limitations to major life activities, including walking and uses a wheelchair for mobility; and has been an individual with a disability within the meaning of LCHR, LA. REV. STAT. ANN. § 51:2232(3)(a).

64.   At all times relevant to this action, DEFENDANT's Property has qualified as a place of public accommodation, resort, or amusement as defined by LA. REV. STAT. ANN. § 51:2232(9) by virtue of either supplying services to the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

65.   The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

66.   The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

67.   DEFENDANT discriminated against MS. SUMAS, on the basis of her disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying her the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered at the Property in part due to the architectural barriers discussed in this pleading.

9

68.    MS. SUMAS deems herself injured by DEFENDANT's discrimination and brings suit under the LCHR to recover compensatory damages for the injuries and loss she sustained as a result of DEFENDANT's discriminatory conduct and deliberate indifference as alleged herein above.

69.    MS. SUMAS is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2264.

## PRAYER FOR RELIEF

WHEREFORE, MS. SUMAS demands judgment against DEFENDANT and requests the following relief:

A.    That this Court declare that the Property owned, leased, and/or operated by DEFENDANT is in violation of the ADA and the LCHR;

B.    That this Court enter an Order directing DEFENDANT to alter the Property and DEFENDANT's policies, practices, and/or procedures to make the Property accessible to and useable by individuals with mobility-related disabilities to the full extent required by Title III of the ADA and the LCHR;

C.    That this Court award damages to MS. SUMAS pursuant to LA. REV. STAT. ANN. § 51:2264 for the discriminatory conduct of DEFENDANT in violation of the LCHR;

D.    That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses to MS. SUMAS pursuant to the ADA and the LCHR; and

E.    That this Court award such other and further relief as it deems necessary, just, and proper under the ADA and the LCHR.

Respectfully Submitted,

**BIZER & DᴇREUS, LLC**
*Attorneys for Plaintiff*

/s/ Garret S. DeReus
ANDREW D. BIZER (LA # 30396)
GARRET S. DᴇREUS (LA # 35105)
EVA M. KALIKOFF (LA # 39932)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email:  andrew@bizerlaw.com
        gdereus@bizerlaw.com
        eva@bizerlaw.com